IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEANNA L. KLINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 3:15-CV-00041-CAN |
| | ) |
| CAROLYN COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Deanna L. Kline ("Kline") filed a complaint in this Court seeking reversal or remand of the final decision denying her application for Supplemental Security Income ("SSI"). As analyzed below, the Defendant's decision as Acting Commissioner of Social Security ("Commissioner") was supported by substantial evidence, was legally sound, and is affirmed by this Court.

**I.   PROCEDURE**

On May 21, 2012, Kline filed an application for SSI with the Social Security Administration ("SSA"), alleging disability beginning January 1, 2007. The SSA denied Kline's claim initially on October 8, 2012, and again upon reconsideration on October 31, 2012. On December 6, 2012, Kline filed a request for an administrative hearing. The hearing was held on August 29, 2013, before an administrative law judge ("ALJ") where Kline and an impartial vocational expert appeared and testified. On October 25, 2013, the ALJ issued her decision finding that Kline was not disabled at Step Five[1] of the disability evaluation process and denied her application for SSI benefits. On November 4, 2013, Kline filed a request for review of the ALJ's decision with the Appeals Council. On November 26, 2014, the Appeals Council denied

---

[1] Social Security regulations 20 C.F.R. § 416.945 provide a five-part test that ALJs must apply in determining whether a claimant is entitled to disability benefits.

Kline's request for review, making the ALJ's decision the final decision of the Commissioner. On January 27, 2015, Kline filed a complaint in this Court seeking reversal or remand of the Commissioner's decision. On June 5, 2015, Kline filed her Memorandum of Law in Support of a Social Security Appeal. Thereafter, on September 10, 2015, the Commissioner filed a responsive memorandum asking the Court to affirm the decision denying benefits. Kline did not file a reply brief. This Court may enter a ruling in this matter based on the parties' consent, pursuant to 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II. RELEVANT BACKGROUND

Kline was born on March 18, 1991, making her 21-years old on the date of her SSI application. She sought SSI based upon an alleged inability to work since 2007 due to a learning disability, ADD, ADHD, depression, having an IQ of a 12-year old, and high blood pressure.

At the ALJ hearing, Kline testified regarding her time spent in foster care, her past sexual abuse, her history of drug and alcohol use, and her history of depression and of attempted suicide. Kline lives in the "self sufficient" unit of a YWCA shelter for abused women and women with addiction problems. Women in that unit are afforded more freedoms than other residents and are required to perform various chores to earn their keep. Kline testified that she occasionally watches her friend's children, ages 9, 3, and 10-months, while at the shelter. When doing so, she would color, and watch movies or television with the children. While on her own at the shelter, Kline testified that she plays on her computer, watches television, and that she can concentrate long enough to watch movies. Additionally, she does her own laundry, will go shopping for food, and will go out to eat or to the movies when she has the money to do so. Kline also testified that medications did help with her symptoms of depression and sleeping problems.

>At the hearing, the ALJ asked the vocational expert the following hypothetical question:
>
>>Please assume an individual of the same age, education, work experience as the claimant. This individual would be able to perform work at all exertional levels, and adding the following. Work would be limited to simple, routine, and repetitive tasks; an occasional interaction with co-workers, supervisors, and the public. Are there jobs in the national and regional economy such a person could perform?

Doc. No. 12 at 92-93. The vocational expert answered in the affirmative, listing several jobs that such a hypothetical person could perform, which are available in significant numbers in both the Indiana and the national economies. The vocational expert testified that all of the jobs he identified are performed at independent workstations and are not fast-paced production line jobs. He further explained that such jobs would only involve one or two steps and would not require a reading ability above the sixth grade level.

After the hearing, the ALJ issued a written decision reflecting findings based on the five-step disability evaluation prescribed by the SSA's regulations. At Step One, the ALJ found that Kline has not engaged in substantial gainful activity since her application date of May 21, 2012, which governs the start of any SSI benefits should she be eligible. 20 C.F.R. § 416.335. At Step Two, the ALJ found that Kline has the following severe impairments: post-traumatic stress disorder, depression, attention deficit hyperactivity disorder, borderline intellectual functioning, and obesity. At Step Three, the ALJ found that Kline does not have an impairment or combination of impairments that meet(s) or medically equals the severity of a Listing.[2] The ALJ then determined Kline's residual functional capacity ("RFC"), finding:

>That [Kline] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can never climb ladders, ropes or scaffolds or have more than occasional exposure to hazardous moving machinery, raw chemicals or solutions, and unprotected heights. The work must be limited to simple routine, repetitive tasks with only occasional interaction with

---

[2] Listed impairments are found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

> co-workers, supervisors and the public, and free of fast-paced production rate pace.

Doc. No. 12 at 24.

At Step Four, the ALJ found that Kline has no past relevant work. At Step Five, the ALJ found that, considering Kline's age, education, work experience, and RFC, and based upon the testimony of the vocational expert, there are jobs that exist in significant numbers in the national economy that Kline can perform. Based upon those findings, the ALJ determined that Kline had not been disabled, as defined in the Social Security Act, since May 21, 2012.

### III. ANALYSIS

#### A. Standard of Review

On judicial review of the final decision of the SSA, the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, an ALJ's findings will be reversed only if they are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). Substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). Substantial evidence may be less than the weight of the evidence, but is more than a mere scintilla. *Sheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). To determine whether substantial evidence exists, the Court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the Court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.

1997). In reaching a decision, the ALJ must build a logical bridge from the evidence to her conclusion, but she need not provide a complete written evaluation of every piece of testimony or evidence. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). Minimally, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

B. **Issues for Review**

In this case, the Court must not ascertain whether Kline is disabled, but rather, whether the ALJ's RFC determination for Kline is supported by substantial evidence. Kline contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly weighed the evaluations of consultative physicians, Dr. Turner-Campbell and Dr. Holleman, and the ALJ made an erroneous credibility determination as to Kline's concentration, attention, and cognitive abilities. Secondarily, Kline contends that the ALJ's Step Five analysis was improper because she relied upon vocational testimony elicited in response to an incomplete hypothetical question. Each of these arguments is addressed in turn.

1. **The ALJ's RFC Determination**

An individual's RFC demonstrates her ability to do physical and mental work activities on a sustained basis despite functional limitations caused by any medically determinable impairment(s) and its/their symptoms, including pain. 20 C.F.R. § 416.945; SSR 96-8p 1996. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 416.945. The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness

5

reports, and any other relevant evidence. SSR 96-7p 1996. "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R.§ 416.912(c). Therefore, when the record does not support specific physical or mental limitations or restrictions on a claimant's work related activity, the ALJ must find that the claimant has no related functional limitations. *See* SSR 96-8p.

### a. Dr. Turner-Campbell's Assessment

First, Kline argues that the ALJ improperly rejected the opinion of consultative examiner Dr. Turner-Campbell, in which she stated that Kline "would not handle routine and/or non-routine changes in the workplace." Doc. No. 12 at 378. In addressing that opinion, the ALJ noted:

> While the consultative examiner [Dr. Turner-Campbell] opined that [Kline] would not be able to handle routine and/or non-routine changes in the workplace, the undersigned gives that portion of the opinion little weight. The cognitive and personality functioning evaluation [performed by Dr. Holleman] indicated that [Kline] worked persistently at tasks and managed her frustration well-during difficult tasks which is inconsistent with the consultative examiner's [Dr. Turner-Campbell's] opinion that the claimant could not even handle routine changes in the workplace.

Doc. No. 12 at 30. The thrust of Kline's argument is that the ALJ's determination that Kline could perform work that was "limited to . . . routine, repetitive tasks" conflicts with other medical evidence, and that the ALJ is improperly picking and choosing between medical evidence.

An RFC finding is a legal determination, rather than a medical one, and the ALJ is required to consider and weigh all the evidence in determining the functional limitations resulting from a

6

claimant's impairment to the extent that they were supported by the record; an ALJ is not required to accept any one opinion in its entirety. *See* 20 C.F.R. §§ 416.927(e), 416.946; SSR 96-5p, 1996 WL 374183; *Diaz v. Chater*, 55 F.3d 300, 306 n. 2 (7th Cir. 1995); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). An ALJ properly discounts an opinion that is inconsistent with and not supported by other evidence. 20 C.F.R. § 416.927(c). An ALJ may not pick and choose the evidence that favors her final decision. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Notably in *Diaz*, the SSI claimant asserted that the ALJ inappropriately relied on a medical opinion stating that he was capable of performing a range of sedentary work, which requires sitting for approximately six hours per day, when another medical opinion reflected that he was limited in his ability to sit for periods in excess of fifteen minutes. *Id*. The court noted that an ALJ may not select and discuss only that evidence that favors her ultimate conclusion, but must articulate, at some minimum level, her analysis of the evidence to allow the appellate court to trace the path of her reasoning. *Id*. The court opined that an ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required. *Id*. The court held that the ALJ met the minimal articulation requirement finding evidence throughout his decision that he considered the medical opinion in question, even though he only assigned it a lesser weight. *Id*. at 307-08.

Here, like in *Diaz*, the ALJ did not fail to consider an entire line of evidence, but rather, she expressly considered Dr. Turner-Campbell's opinion and assigned it a lesser weight. Specifically, the ALJ demonstrated that Dr. Turner-Campbell's opinion was inconsistent with the opinion of consultative examiner Dr. Holleman. The ALJ referenced Dr. Holleman's notes on Kline's behavior during two hours of psychological testing, in which she performed well in

7

multiple tasks leading the doctor to conclude that Kline could in fact handle routine and/or non-routine changes in the workplace. In further support of her conclusion that Dr. Turner-Campbell's opinion was inconsistent with medical evidence in the record, the ALJ noted the opinion of Kline's case manager, Judy Darnel. In Darnel's opinion that Kline was restricted in her ability to maintain attention and concentration for extended periods, the ALJ found support to include a limitation in Kline's RFC of routine and repetitive work. Doc. No. 12 at 30. As a result, the ALJ's decision satisfies the articulation standard set forth in *Diaz*.

Moreover, Kline herself asserts that had the ALJ properly assessed Dr. Turner-Campbell's opinion that Kline "would possibly be found disabled." Doc. No. 17 at 10. Thus, Kline concedes that if Dr. Turner-Campbell's opinion were weighed more heavily as she requests, a finding of disability would merely be a possibility. However, reversal is only warranted when the record compels a contrary result. *See Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010). Therefore, remand would not be appropriate here regardless.

In summary, the ALJ sufficiently articulated her rationale for discounting Dr. Turner-Campbell's opinion and built the necessary logical bridge from the evidence to her conclusion.

### b. Dr. Holleman's Assessment

Next, Kline, again, makes an argument that the ALJ improperly picked and chose evidence when evaluating Dr. Holleman's opinion. Over a page and a half of her brief, Kline presents a scattershot of portions of Dr. Holleman's opinion, including references to Kline's memory and concentration deficits that she contends support a finding that she cannot perform repetitive tasks. Kline asserts that the ALJ's decision to the contrary fails to explain why Dr. Holleman's limitations were rejected.

8

The level of analysis Kline demands of the ALJ is not in line with the applicable legal standard. An ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to her conclusion. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The ALJ's decision demonstrates that she gave careful consideration to Dr. Holleman's opinion, as the decision is replete with discussion of the opinion. *See* Doc. No. 12 at 26, 29, 30. After completing her last discussion of Dr. Holleman's opinion, the ALJ then notes that she "has accounted for the claimant's memory and concentration deficits by limiting her to work that is simple, routine and *repetitive*, free of fast-paced production rate." Doc. No. 12 at 31 (emphasis added). Thus, the ALJ considered exactly the parts of Dr. Holleman's opinion that seem to concern Kline here in determining that Kline could perform repetitive work. Moreover, Kline fails to mention that Dr. Holleman did not conclude that she was so limited that she could not work. *See* Doc. No. 17 at 8-10; Doc. No. 12 at 625-32. Dr. Holleman did indicate that Kline would "prefer not to take a leadership role," and "would likely do better if she is not required to multi-task," but noted that she should continue "to explore potential career options." Doc. 12 at 631. These opinions are consistent with, and provide substantial evidence in support of, the ALJ's determination that Kline is limited to simple, routine, repetitive tasks with only occasional interaction with others. Therefore, the ALJ sufficiently articulated her reasoning for her treatment of Dr. Holleman's opinion.

### c. Credibility Determination of Kline's Mental Impairments

Kline's final challenge to the RFC determination is based upon the ALJ's purported error in assessing Kline's credibility with respect to her concentration, attention, and cognitive abilities. An ALJ must follow a two-step process, determining first whether there are underlying medically determinable physical or mental impairments that could be reasonably expected to

produce the claimant's symptoms, and second determining whether the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *See* 20 C.F.R. § 416.929, SSR 96-4p, 96-7p. At the hearing, Kline testified that she is unable to work due to depression, concentration problems, and her emotions. The ALJ found that Kline's medically determined impairments could be reasonably expected to cause her alleged symptoms, but the ALJ did not find Kline's statements concerning "the intensity, persistence and limiting effects of [those] symptoms [to be] entirely credible." Doc. 12 at 25.

An ALJ's credibility finding is entitled to great deference and should be upheld unless patently wrong. *See Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007). Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the court] declare it to be 'patently wrong.'" *Elder*, 529 F.3d at 413-14 (internal citations omitted). An ALJ must only give reasons for the weight given to a claimant's statements sufficient to provide a fair sense of how she assessed the claimant's testimony. *See* SSR 96-7p, 1996 WL 374186. An ALJ complies with SSR 96-7p, and the Court will affirm her finding, so long as she "gives specific reasons that are supported by the record." *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). A claimant's contentions, which "are nothing more than a rehash of the medical records that do not point to any specific evidence contradicting the ALJ's conclusions" will not support reversal. *Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005).

Here, Kline's credibility argument is simply a rehash of the medical records without any specific citation to evidence contradicting the ALJ's finding. Kline makes a blanket statement,

without any further direction, that medical evidence within her submission to the Court supports her position. Doc. No. 17 at 11-12. Moreover, in her decision, the ALJ gave reasons for her credibility assessment, citing all of the activities that Kline engages in, including: doing chores and taking classes at the YWCA, watching her friend's children, looking for a part-time job, painting, coloring, watching television, using a computer, playing games, watching movies for at least an hour, completing high school and a semester of college, and more. Doc. 12 at 25-31. Consequently, the ALJ has provided adequate explanation for her credibility determination and, as such, it is not patently wrong and deserves deference.

### 2. Step Five Analysis

Last, Kline asserts that the ALJ's Step Five determination that Kline is capable of performing other work in the national economy is not supported by substantial evidence. The Step Five determination was based upon the opinion of vocational expert Ronald Malik, who Kline contends relied on an "incomplete hypothetical question" in reaching his opinion. Kline's argument is essentially that the Step Five analysis is erroneous because it flows from the erroneous RFC determination. However, the ALJ was not required to include in her questioning to the vocational expert any limitations that she did not find to be credible or supported by the evidence. *Simila v. Astrue*, 573 F.3d 503, 520-21 (7th Cir. 2009). Because the ALJ's RFC determination is not changed as a result of this opinion and order, the hypothetical question was not incomplete, and this argument also fails.

**IV.    CONCLUSION**

Because the ALJ properly evaluated consultative opinions of Dr. Turner-Campbell and Dr. Holleman and because the ALJ's credibility determination of Kline's concentration, attention, and cognitive abilities was not patently wrong, this Court concludes that the ALJ's RFC determination is supported with substantial evidence.  Thus, this Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  [Doc. No. 17].  The Clerk is instructed to term the case and to enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 12th day of February, 2016

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge